EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

RECEIVED & FILED
01 DEC 19 PM 1: 18

UNITED STATES OF AMERICA |
Plaintiff

CLERK S OFFICE
U.S. DISTRICT COURT
SAN JUAN P.R.

-v-                                          CASE NO: CR.00-048

JULIO C. PEREZ-RUIZ
Defendant
/

## OBJECTION TO PRESENTENCE INVESTIGATION REPORT

**TO THE HONORABLE COURT:**

:    COMES NOW  the Defendant, throughout his undersigned Counsel Mr. Octavjo Rivera Bujosa hereby present the following objections to (PSR) pursuant to Rule (32) (6)(B) and (C)(I) of the Federal Rules Code of Criminal Procedures.

### Introduction

On November 14, 2001, this Honorable Court entered an order canceling the Defendant's Julio C. Perez Ruiz sentencing Proceeding due to a lasted filing of the (PSR) by the U.S. Probation Office.  The Defense received PSR (2) days before the schedule sentencing Date, prejudicing the defendant "Due Process clause" and nevertheless Rule 32 (6)(A) of the Federal Rules of Criminal Procedures.

Opportunity shall be given to make objection to any material information, sentencing classification, sentencing Guideline ranges, and Policy statement contained or omitted from the Present Report of any factors that may suggest a different sentence at the sentencing Hearing, Rule 32 (C)(I).  The court must make a written record of these findings and determination, and must rule on any unresolved objection to the P.S.R., and may, permit the parties to introduced testimony or other evidence on the objections, in order to established a Proper sentence as described by 28 U.S.C § 994 (a)(Sentencing Commission).

By construing the pertinent objection to (PSR) and should the Court finds plausibility; the judgment of Conviction most set forth the verdict of findings, the adjudication, and the sentence, thus Judgment most be entered accordingly.

Defendant hereby will point out a substantial argument that in view of 'Procedure Defaults' the otherwise sentence would have been imposed in violation of the laws and a result of an incorrect application of the Sentencing Guideline.

An evidentiary hearing could be the only reliable way to resolve disputed issues., See <u>U.S. V. Jiménez Martínez</u>, 83 F.3rd 488-494 (1st Cir. 1996). Also, see <u>U.S. V. Watts</u>, 117 U.S. 633-635 (1991)... 'holding that a that a lower evidentiary hearing standards at sentencing permits sentencing Courts consideration of acquitted conducts...'

Under Rule 32 (c) the Court requires to make factual findings of contested Matters to PSI. The use of preponderance of evidence standard is appropriate to meet 'due Process' requirements. Under the 5th Amendment, and Policy concern in resolving disputes regarding application of Guidelines Provisions to the facts of the Case, thus the Court must make factual finding related in dispute here as to the "specific" weight attributable to the defendants case; see <u>U.S. V. Hanono-Surjon</u>, 914 F. 2nd 15 (1st Cir. 1990). Additionally, to facilitate judicial review of sentencing decision, sentencing should make <u>explicit findings of facts and Conclusions</u>.

Since the PSI is not evidence, specific findings must be carefully review by this Honorable Court. And Finally the Government most produce evidence sufficient to persuade the sentencing court by preponderance of evidence that the Prosecution position is correct, <u>which it has been unable to proof otherwise</u>.

Having Due regard for the proposes set forth, it is respectfully requested that this Honorable Court take notice of the pertinent objections to (PSR). In support the defendant 'Point out' as follows;

### Offense

On July 26, 2001, a Federal Grand Jury entered a quilty Verdict against the defendant on Court One of the indictment, charging him.

<u>21 USC §.841 (b)(1)(a) and 846</u>: Conspiracy to distribute at least (1) one Kg heroin, at least (5) five Kg of cocaine and an excess of (50) fifty of cocaine base class "A" felony.

### Objection

The defense objects as to the following chronological PSR issues:

I. Objection to PSR in relation to the list of Co-Defendants Presented in PSR-Pg #2,3, and 4.

During and throughout the alleged conspiracy scheme (accusatory hearing), the defendant does not have personal knowledge of the person accused within the conspiracy. A listing of such could possibly jeopardized the defendant's security during

the term of incarceration. A listing of such could create a significant impact as to the credibility in the defendant case while in General Population in Prison.

II. The Defendant further objects to the specific alleged amount of substances attribute or charge on Court One of the Indictment for the following reasons:

The case at hand involved a "Main Conspiracy" which in terms involved multiple Conspiracies, therefore:

A) The indictment charge against the Defendant didn't specify the amounts of Drugs that were attributable to the Defendant.

1. As this Honorable Court may notice, in the case at hand, the Indictment presented against the Defendant didn't informed the Defendant of the specific amount of drugs that were attributed to him as an alleged member of one of the conspiracies that were part of the main conspiracy.

Multiple conspiracies may involve certain parties common to tall the conspiracies, but their distinguishing feature is that they lack an overall goal or common purpose; rather, each agreement has its own distinct illegal end, or separate adventures of like character. Kotteakos V. United States, 328 U.S. 750 (1946). "Guilt with us remains individual and personal, even as respects conspiracies. It is not a matter of mass application." Kotheakos V. Unites States, Supra at 772.

In the case at hand, neither the Indictment specify the amount of drugs charge to the Defendant, nor did the jury made a finding addressing the issue of multiple conspiracies and the appropriate determination of an amount attributable to the Defendant.

2. As we mentioned before, in the case at hand the jury didn't made any specific finding with regard to the amounts of drugs attributable to the defendant, therefore, we raise the following points:

a. First, we argue that in the light of APPRENDI V. NEW JERSEY, 530 U.S. 466 (2000), the determination of "Drug quantity" in the case at hand is an element of the offense charge against the Defendant and must had been charge specifically in the Indictment, submitted to the jury and proved beyond a reasonable doubt.

As this Honorable Court already knows, that didn't happen during the trial, which in terms caused that we do not have a drug quantity determination from the jury.

Again, we bring to the attention of this Honorable Court, that in the case at hand the jury was never instructed to determine the amount and the type of drugs attribute to the Defendant.

b. Assuming that "Drug Quantity" is not an element of the offense charge against the Defendant, and that it is a sentencing factor, we object to the amounts of drugs that are attribute to the Defendant in the Pre-sentence report and very respectfully pray this Honorable Court to celebrate a hearing in which the court could examine thoroughly the record of the case in order to make a finding under the "Preponderance of Evidence" standard.

This determination was never addressed nor the trial transcripts reflect the same; thus in view of our constitutional scheme the sentence of conviction could be an invalid one and subjected to Judicial Review under 18 USC 3747 (a) (1) (2). The sentencing commission has promulgated factors for an appropriate and valid sentence. In the instant case, the Government failed to render a just proper and attributable weight amount, this factor should be taken into consideration as promulgated by the U.S.S.G. § 1B1.3 (Relevant Conduct).

Reasonable "foreseebility" governs attribution of drug quantities to various members of conspiracy. In addition relevant conduct is not necessarily the same for every participant in a conspiracy, thus, sentencing courts must distinguish between co-conspirators for the purpose of accomplice attribution, see Wilking and Steer, 41 S.C.t. L. Rev at 5110, holding that the defendant in narcotic conspiracies may be held accountable for different quantities of drugs that his or her co-conspirator. See U.S. V. Collado 975 F. 2d 985., (it was held that in deciding where the accomplice attributions under 'relevant conduct' provision of the U.S.S.G are appropriate, rather seeking and individualized inquiry into the circumstances surrounding each defendant sentence accurately reflects his or her role). In Collado, supra, the court sets forth the standards for accomplice attribution, and the court acknowledge that co-conspirator's conduct must be in furtherance of jointly undertaken activity and within the scope of the defendant's foreseeable in connection with the criminal activity the defendant agreed to undertake, Collado at 991-92. See, US V. O'Campo, 973 F.2nd 1015 (1st Cir. 1992)., (it was held that simple knowledge that the supplier other person is not enough to assess all quantities distribute by the supplier to each person who purchase drug to the supplier).

The government requires to proof a 'relevant conduct' quantity drugs for purpose of enhancing a sentence must be evidence that points specifically to a drug quantity for which the defendant is responsible. Our the preponderance of evidence standard shall be use to determine aspects of relevant conduct. See U.S. V. Gigante, 94 F. 3rd 53. 60 Cr L 1023 (CA 2 1996).

The Government failed adequately to proof such conduct under "specific evidence". In view of the mentioned issues and facts, the Pronouncement of a sentence of imprisonment, if goes uncorrected, and within the application of proper Rudimentary Rule of Justice, would be an invalid sentence and subject to be vacated.

III. Defendant further objects as to the PSR on count Two of the indictment, charging him to wit: 18 USC 1956 (h) (Laundering of monetary instrument). With respect to the above-mentioned count, this Honorable Court Dismissed said Count during the course of

the trial proceeding without a government objection to the related charged. Like wise, the Jury never pronounced a guilty verdict on count two of the indictment.

It is respectfully requested that count 2 should be deleted from (PSR).

IV. Objection to (PSR) with respect to the defendant past entered a "Plea Agreement'. As to this matter this Honorable Court made a ruling vacating the "Plea Agreement" entered by the Defendant. No existing evidence or legal Document was ever signed before the commencement of his trial. It is respectfully requested that this issue is stricken form PSR.

V. Objection to (PSR), with respect to the promulgation "modes of operandi" as to various members of the conspiracy in relation to the defendant alleged acts, the using of violence, to include murder, the cooking of cocaine powder to produced "crack cocaine" for retail distribution.

In regards to the above, the defendant was never involved in the distribution of "crack" and nevertheless no existing evidence point that defendant distributed the same. The Grand jury never determines any related "specific weight" in relation to crack cocaine, the record is silence.

VI. The defendant further objects as to the claim that he acted by inclusion of murder. During the trial proceeding and after the Jury verdict it was never concluded that the defendant committed nor participated in such act. The testimony of a Government witness during trial with respect to this inclusion was never substantiated as to be taken into consideration along with the pronounced verdict. Most importantly, the Jury found the defendant quilty only on Count One of the indictment, that is conspiracy to Distribute control substances. Finally, the Indictment presented against the Defendant do not mention at all such murder.

VII. Objection to PSR with respect as to identification of the Defendant as an "enforcer" for Mr. O'Conner Colón Aka "Miguel La Cabra" organization. In regard to the above, there was no conclusive evidence presented during the trial proceeding substantiating the same, neither that the Defendant ever enforced any murder for Mr. O'Connor, nor that the defendant was part of Mr. O'Connor organization.

VIII. Objection to PSR, with respect as to the identification of the defendant as a runner for Mr. Zaeton-Pabón organization. As to the above reference matter, it was never concluded before and after the trial proceeding, and nevertheless it was never reinstated by the pronouncement of the Jury Verdict. It is respectfully requested it be stricken from (PSR).

IX. Objection to (PSR) with regard to the Government identification of the defendant as a supervisory managerial role. As to this inclusion, in light of testimony, the Government did not clearly established beyond reasonable doubt that he was the supervisor/manager of the alleged organization. Furthermore, throught the course of the trial proceeding the

conspiracy scheme was never clearly established.  Moreover, the Defendant was never charge in the Indictment as a supervisory managerial role.

X.  The Defendant objects any enhancement of the sentence based on prior convictions of the Defendant since the Government did not comply with the procedure establish in 21 U.S.C. 851 (a) (1).

        In other words, that the United States Attorney did not file an information with the court stating in writing the previous convictions to be relied upon.

XII.  The defendant objects to the enhancement pursuant to Guideline §4A1. 1(d). since the Indictment charge the Defendant of a continuing crime since on or about 1992. Therefore, the two (2) points added pursuant to §4A1. 1 (d) shall not be added.

Dated: _19/Dic/01_                              Respectfully Submitted

                                                _____
                                                Octavio M. Rivera-Bujosa. , Esq.
                                                Attorney for Defendant


### CERTIFICATE OF SERVICE

    I, Attorney at law, certify that a copy of the same has been served to the following parties:

Clerk of the Court
U.S. District Court
150 Carlos Chardón Avenue
Hato Rey, PR  00918

A.U.S.A.
Sonia Torres
U.S. District Court
150 Carlos Chardón Avenue, Room 452

Hato Rey, PR  00918

Julio C. Pérez-Ruiz
Req. No.: _____
Metropolitan Detention Center
Guaynabo, P.R.

_____
Octavio M. Rivera-Bujosa, Esq.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,  *
                              *

                  v.  *     Crim. No. 00-048 (JAF)

                              *

JULIO PEREZ RUIZ (#22),  *

                              *

         Defendant.  *

---

## SENTENCING MEMORANDUM,
## AND OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

TO THE HONORABLE COURT:

    COMES NOW the defendant, JULIO PEREZ RUIZ, through the undersigned court-appointed attorney, and respectfully states and prays as follows:

### Introduction

    Following a jury trial, Mr. Perez was convicted of conspiracy to distribute multi-kilogram quantities of narcotics in violation of 21 U.S.C. sec. 841(a)(1), and 846.    The United States Probation Office prepared and filed a Presentence Investigation Report ("PSI"), and Mr. Perez in response filed objections to certain findings. See Docket Doc. 723, 735. On March 18, 2002, this Court sentenced Mr. Perez to life imprisonment without parole, upon applying United States Sentencing Guideline ("U.S.S.G.") 2D1.1(d)(1), which instructs that when a victim is killed in

2

circumstances that would constitute murder, the court should apply Guideline 2A1.1
(the provision applicable to first degree murder).

The First Circuit Court of Appeals vacated that sentence pursuant to the
doctrine of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), due to the jury's failure to
find the charged offense involved a quantity of narcotics sufficient to trigger the
enhanced maximum penalties. The First Circuit therefore remanded for resentencing
to a term not to exceed twenty years. This Court has scheduled the re-sentencing
hearing for May 20, 2004.

Mr. Perez respectfully submits the following objections and comments to the
PSI for consideration during the upcoming re-sentencing hearing. Mr. Perez further
requests an evidentiary hearing and specific written findings for each sentencing
factor in dispute. <u>See</u> Fed. R. Crim. P. 32(i)(3)(B).

**I.    The evidence does not support application to the cross-reference to U.S.S.G. 2A1.1 for first degree murder.**

The PSI found Mr. Perez participated in the murder of Saul Perez as the result
of a drug dispute, and thus applied Guideline § 2D1.1(d)(1), which instructs that
when a victim is killed in circumstances that would constitute murder, the court
should apply Guideline § 2A1.1 (the provision applicable to first degree murder),

3

resulting in a Base Offense Level ("BOL") of 43. Docket Doc. 723, p. 8-9. The PSI cites no specific evidence for its conclusion that Mr. Perez was involved in the murder, but merely states that this finding was "presented by the government". PSI, p. 8. Mr. Perez objects to the PSI's finding that he participated in Saul's murder, and objects to the application of the cross reference to Guideline 2A1.1.

As with other disputed sentencing findings, the sentencing court must determine whether Mr. Perez was involved in the murder based upon a preponderance of the evidence. Importantly, the preponderance standard "is not without rigor" and "certainly does not relieve the sentencing court of the duty of exercising the critical fact-finding function". United States v. Wise, 976 F.2d 393, 402-03 (8th Cir. 1992) (en banc).

In considering evidence of disputed sentencing factors, the Court must determine whether the information presented "has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. 6A1.3(a). The sentencing court is required to "make an independent determination regarding the reliability of the proffered evidence" even when the evidence was presented at trial. United States v. Tavano, 12 F.3d 301, 306 (1st Cir. 1993). The sentencing court, moreover, must fully consider all evidence that undermines or contradicts a witness's testimony when making a sentencing determination. Id.

4

In this case, the government has not shown by a preponderance of the evidence that Mr. Perez bore the responsibility for Saul's murder. At trial, the only evidence the government presented to tie Mr. Perez to the murder was the testimony of Joel Irizarry -a lifelong criminal and drug addict - who stated that Mr. Perez once stated that Mr. Perez and co-defendant Jessie Quinones ("Jesse") were present when co-defendant Francisco Zaeton ("Paquito") shot and killed Saul in a drug dispute. See Exhibit A (Transcript 7/23/01), p. 20-23. For many reasons, this Court should find that Irizarry's testimony was inherently unreliable and did not have "sufficient indicia of reliability to support its probable accuracy."

**1.     Irizarry is a life-long criminal who has sought through obstruction of justice to escape prosecution and punishment for his numerous criminal acts.**

First, Irizarry has been a criminal his entire life. He currently stands accused of first degree murder for brutally slaying a man in Penuelas with a machete on January 10, 2004. On that date, according to the criminal complaint, he murdered Mr. William Santiago Cruz by striking him with a machete in different parts of his body. He is also charged with setting fire to and burning the victim's car, and with using the machete to threaten Mrs. Wilmary Chamorro Santiago and her children to prevent her from testifying regarding the incident. According to the charge, he told her to "shut

5

her mouth," and that if she told anyone he would kill her and make it hurt. <u>See</u>
Exhibit B.

Irizarry's latest crime is consistent with his past. At 15, Irizarry owned and ran
his own drug point in Penuelas. <u>See</u> Exhibit C (Transcript of Grand Jury Testimony),
p. 4.[1] While still a minor he was charged with attempted murder and corruption of
an under-aged female, receiving probation. <u>Id.</u>, p. 5-6. Upon release from a minors
institution, he again was charged with attempted murder in a separate incident, as well
as damage to property and breach of the peace, resulting in revocation of probation
and a three year jail term. After serving one month, he escaped and fled to New York,
where he sold narcotics and was arrested. <u>Id</u>, p. 7-8. He returned to Puerto Rico in
April 1991, where he was arrested for the escape and later released. He was arrested
again in 1992 or 1993 for illegal appropriation and threat, and after finishing a year's
probation went to Milwaukee to sell drugs till he returned to Puerto Rico in January
1995 after some people tried to kill him. <u>See</u> Exhibit A, p. 5-9. In 1999, he worked
for a drug gang in the Tibes housing project, and several times went out looking for
persons to kill. <u>See</u> Exhibit C, p. 21. Irizarry admitted to being an accessory before
the fact to a triple homicide committed by the Tibes drug gang in Ponce in February

---

[1] At trial, Irizarry did not admit owning this drug point, but claimed he worked
for Saul Perez, apparently trying to minimize his own criminality in the eyes of the
jury. <u>See</u> Exhibit A, p. 4.

6

2000. See Exhibit A, p. 23-26. Irizarry's prior known convictions include criminal threats (1993), aggravated illegal appropriation (1993), aggravated illegal appropriation (1995), and attempted robbery (1996). See Exhibit D.

Importantly, many of the acts in Irizarry's lengthy criminal resume involved attempts to obstruct justice to avoid prosecution or punishment.  These include Irizarry's escape from a correctional facility, fleeing to New York, the 1993 charge of criminal threats, and most recently the threat to murder with a machete a female witness and her children.  Since Irizarry has committed extreme acts in order to avoid punishment, this Court may reasonably conclude that he would also fabricate testimony if he believed it could help him avoid prosecution for his many crimes.  He is a violent and inherently unreliable witness.

**2.    Irizarry's lifetime of drug addiction has clouded his memory and further motivates him to fabricate testimony.**

Second, Irizarry has been a drug addict for most of his life, and there is evidence that his addiction has affected his perception of events and motivates him to lie in order to stay out of jail.  Irizarry started using marijuana at 14, cocaine at 15, and heroin at 17. See Exhibit A, p. 4. He used heroin "practically every day." See Exhibit C, p. 8.  At trial he testified that he could not remember certain details after he got out of prison in 1998 because he was using so much drugs at the time. See

7

Exhibit A, 66-67.[2] Irizarry continued his criminality and drug use - with impunity- even after he began cooperating with the government and was placed in a witness protection facility. In particular, he assaulted someone while at the facility, possessed a liter ("padrino") bottle full of rum, and continued to use drugs. See Exhibit C, p.53- 54. Irizarry's drug cravings - which admittedly clouded his memory and provided even greater motivation to avoid incarceration - make his testimony inherently unreliable. See United States v. Simmons, 964 F2d 763 (8th Cir. 1992) (testimony of drug addict with impaired memory inherently unreliable and disregarded for sentencing determinations).

### 3.    Irizarry's mental health records further suggest he is an unreliable witness.

Third, Irizarry's mental health history further suggests he is unreliable. According to prison records, Irizarry was treated in prison in June 1998 for a mental health condition, and was prescribed Thorazine for that condition. See Exhibit E. As this Court is aware, Thorazine is a medication "used for the treatment of schizophrenia (severe disruptions in thought and perception)". See Exhibit F.

---

[2] Irizarry's failure to remember details due to his drug use concerned a conversation he allegedly overheard regarding Mr. Perez's purchase of bad cocaine from Paquito. This conversation was from the same crucial time period (after Irizarry got out of jail in 1998) when Irizarry claims Mr. Perez admitted his participation in the murder.

8

4.    **Irizarry was not even an eyewitness to the murder, and his entire testimony is based on what Mr. Perez supposedly told him eighteen months later.**

Fourth, Irizarry does not even purport to be an eyewitness to the murder, since he was incarcerated when it occurred.  The government's entire theory connecting Mr. Perez to the murder rests on what Irizarry claims Mr. Perez told him after Irizarry got out of jail - eighteen months later - in August 11, 1998.[3]  The government has presented no physical evidence or eye witness to connect Mr. Perez with the murder or the crime scene. This Court has no way of deciding whether Irizarry was truthfully testifying as to what Mr. Perez supposedly admitted - as opposed to merely repeating a rumor he heard in jail or on the street - other than by granting him credibility which the record shows he does not deserve.

5.    **Irizarry's version is contradicted by other evidence.**

Fifth, Irizarry's version is contradicted by other evidence.  <u>United States v. Miele</u>, 989 F.2d 959 (3rd Cir. 1993) (inconsistencies in record and testimony of addict informant do not have sufficient indicia of reliability to support sentencing determination).  In particular, Irizarry's version of the murder  was contradicted in key aspects by the investigation of Officer Nazario.  Importantly, Nazario claimed to

---

[3] According to evidence at trial, the murder happened on January 22, 1997. <u>See</u> Exhibit A, p. 71.  Irizarry was in jail for thirty months from 1996 until his release on August 11, 1998. <u>Id.</u>, p. 28.

9

have interviewed several eyewitnesses to the murder, but none of these supposed witnesses said that Paquito or Jesse were involved, Exhibit A, p. 94, which seriously undermines Irizarry's version. Importantly, absent Paquito's participation, the record cannot support a finding that this murder was connected to the charged conspiracy or that it constituted relevant conduct for the offense of conviction. U.S.S.G. § 1B1.3(a)(1).

**6. Irizarry's testimony is unreliable because he clearly hoped for and received substantial benefits from the government.**

Finally, by testifying against Mr. Perez and others, Irizarry hoped for, and received, substantial benefits from the federal and Puerto Rico governments. He received a written immunity agreement from the Commonwealth government for his participation in the triple homicide by members of the Tibes drug gang. See Exhibit G. The federal government also never indicted him for that (or other) federal crimes, even though the members of the Tibes drug gang were indicted federally in Crim. No. 00-333 (PG). The federal government did not indict, and continued to utilize Irizarry's testimony against Mr. Perez, even after learning Irizarry continued to use drugs and committed assault while at a witness protection facility. The immunity from prosecution Irizarry has enjoyed left him on the street until January 2004, when he was arrested for the machete slaying discussed above. The government's and

10

society's trust in Irizarry has been repaid by one criminal act after another, and his testimony should not be credited by this Court.

In short, Irizarry's flimsy, uncorroborated claim that Mr. Perez admitted participating in the murder must be weighed against Irizarry's long history of crime, drug addiction, avoidance of punishment, and inconsistent testimony. On balance, his testimony does not present sufficient indicia of reliability to support a cross reference to first degree murder.

**II.    Even if the murder cross reference is applied, this Court should downwardly depart given the complete absence of evidence of Mr. Perez's premeditation.**

As discussed above, there is no reliable evidence to support a cross reference to first degree murder. However, if a cross-reference is applied, this Court should downwardly depart to a BOL of 33 due to the complete absence of evidence that Mr. Perez had knowledge or premeditation that Paquito would commit the murder of Saul.

The application notes to USSG 2A1.1 provides that:

> If **the defendant** did not cause the death intentionally or knowingly, a downward departure may be warranted. The extent of the departure should be based upon the defendant's state of mind (e.g., recklessness or negligence), the degree of risk inherent in the conduct, and the nature of the underlying offense conduct. However, the Commission does not envision that departure below that specified in 2A1.2 (Second Degree Murder) [33] is likely to be appropriate.

11

Even if this Court grants credibility to Irizarry, which it should not, there is no evidence that Mr. Perez intentionally or knowingly killed Saul. Initially, according to Irizarry, Saul was killed by Paquito and not Mr. Perez, whose alleged role in the crime is unclear. Under such circumstances, the application of a level 43 to Mr. Perez would be harsh and unwarranted. Cf. United States v. Hennins, 77 F.3d 346 (10th Cir. 1996) (defendant must know murder was premeditated for murder Guideline to apply). Moreover, there is no evidence that Mr.Perez knew that Paquito intended to murder Saul on the night of the crime. To the contrary, Irizarry's version was that Mr. Perez was present on previous encounters between Paquito and Saul that did not result in violence. See Exhibit A, p. 20-23. Given the fact that it is undisputed that Mr. Perez did not himself commit the murder, and the complete absence of evidence that Mr. Perez himself intended the death, a downward departure to level 33 would be appropriate in this case in the event that the murder cross reference is applied.

**III.    The two-level increase for managerial role may not be imposed if the murder cross-reference is applied, and instead a four-level mitigating role for minimal participation should be applied.**

The PSI recommended a two-level increase for managerial role under U.S.S.G. § 3B1.1(c) based on finding Mr. Perez was depicted by the government as a manager

12

of a drug point. Docket Doc. 723, p. 9-10. Mr. Perez objects to this increase if the murder cross reference is applied.

Importantly, Guideline § 1B1.5(c) instructs that if the offense level is determined based on a cross-reference, adjustments under Chapter Three (which include role in the offense adjustments) also are determined in respect to the cross-referenced guideline. U.S.S.G. § 1B1.5(c). Thus, if the BOL is determined based on a cross reference to the offense of murder, the pertinent inquiry must be Mr. Perez's role in *that* offense (Saul's murder), rather than in the distribution of narcotics. Clearly, there was no evidence Mr. Perez assumed a managerial role in the murder, and even Irizarry testified Paquito committed the murder and Mr. Perez performed, at most, an assisting role. If anything, the evidence shows Mr. Perez was a minimal or minor participant in the murder, warranting a corresponding four or two level reduction under U.S.S.G. § 3B1.2(b).

## IV.    The PSI failed to make any calculation of the PSI based on drug type and quantity attributable to Mr. Perez.

As discussed above, the PSI improperly calculated the BOL based on a cross reference to the Guideline applicable to first degree murder. For this reason, the PSI did not include any calculation of the type or quantity of narcotics that could be

13

attributable to Mr. Perez as relevant conduct under the Guidelines. In the absence of a cross reference, such a calculation is necessary to determining the BOL.

Because the PSI has not provided any calculation of drug quantity (and has not specified what evidence would support such a calculation), Mr. Perez is not in a position to address this crucial sentencing factor. Mr. Perez therefore respectfully requests that this Court order the PSI to be amended to make a BOL recommendation based on attributable drug quantity, and that Mr. Perez be provided with a period of fourteen days do present any objections to the PSI's recommendation. See Fed. R. Crim. P. 32(d) - (f).

## CONCLUSION

WHEREFORE, Mr. Perez respectfully requests that this Court take notice of the foregoing objections and comments to the PSI and incorporates them into its sentencing determinations.

Respectfully submitted in San Juan, Puerto Rico, this 17th day of May, 2004.

14

## CERTIFICATE OF SERVICE

I, Bruce J. McGiverin, do certify that on this same date this present motion was

filed electronically, with an electronic copy to be sent by the Court to: AUSA Sonia

Torres, Esq., and U.S.P.O. Brenda Davila.


S/Bruce J. McGiverin
BRUCE J. McGIVERIN
USDC No. 204901
Suite 1113
Mercantil Plaza Building
Ponce De Leon Avenue
Hato Rey, PR  00918
(787) 753-6131
(787) 753-7053
giverin@coqui.net

EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,
           RESPONDENT,


V.                         CASE NO. 00-0048


JULIO PEREZ-RUIZ,
           PETITIONER,


AFFIDAVIT OF JULIO PEREZ-RUIZ

I, Julio Perez-Ruiz, state the following to be true and correct, and I state the following in support of the matters involved in the present case.

1. That I am the defendant in the present case, in which I have been convicted for a drug conspiracy offense by way of a jury trial.

2. That I have informed my attorney during the trial proceedings of my case that I did not have involvement with the La Cabra nor Paquito organizations drug conspiracy.

3. That I informed my attorney during the trial proceedings of my case that I did not have a drug point as alleged by the witnesses at my trial.

4. That I informed my attorney that I had no knowledge, participation, nor association with the government witnesses Joel Irizarry and their illegal drug dealings, nor their involvement with the La Cabra organization.

5. That I informed my attorney that even contending I had involvement with illegal narcotics, I had no involvement with the La Cabra organization, that I did not have a drug point in Penuelas nor ponce, and I did not have drug dealings with the witnesses Joel Irizzary and Franky Pietri Sepulveda at anytime.

6. That I did not possess a firearm during any illegal drug activities, specifically, during the La Cabra conspiracy, as I had no involvement with the La Cabra Organization.

7. That I did not have any leadership, control, nor decision making over and/or for anyone involved in the La Cabra organization or any other organization, as I did not commit any illegal drug dealing with any other individual, nor did I have any involvement with a conspiracy.

1

8. That did not commit any murder as alleged and testified to at my trial, nor did I have any involvement with a murder as alleged at my trial.

9. That any information and/or testimony stating that I had a drug point in Penueals, that I had a drug point in Ponce, that I possessed a firearm during the La Cabra conspiracy, that I had leadership and/or control of  individuals, including individuals involved in the La Cabra organization, that I had involvement with the witnesses Irizarry and Sepulveda, and that I commited and/or had involvement with any murder is false and unreliable.

10. That had I been informed by my attorney at sentencing that I could have testified to the truth of these matters at sentencing, would have testified to the truth of the matters as set out in the present affidavit.

11. That I never received drugs, specifically, heroin, cocaine, nor cocaine base from anyone involved and/or associated with the La Cabra organization, nor did I possess, distribute, or conspire to do the same with fifteen (15) kilograms of cocaine that was involved in the La Cabra organization.

12. That I was never informed by my attorney, the court, nor the prosecution that I had a fundamental right to have the jury determine drug type and quantity beyond a reasonable doubt throughout the proceedings of my case.

13. That the contents of the present affidavit are true and correct, and that I am competent to testify to the matters herein in any court of law to the best of my knowledge, information, recollection, and belief.

I declare under penalty of perjury that the foregoing is true and correct pursuant to Title 28 U.S.C. § 1746.

_31/01/06_
Date

_Julio Perez-Ruiz/Affiant_

2